[No. 15978. Department One.—December 18, 1895.]

## CLARA HOWLAND ET AL., RESPONDENTS, v. OAKLAND CONSOLIDATED STREET RAILWAY COMPANY, APPELLANT. CONSOLIDATED PIEDMONT CABLE COMPANY, DEFENDANT.

NEGLIGENCE—COLLISION OF STREET RAILWAYS—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—In an action to recover damages from a collision of the cars of two street railways, where a verdict and judgment was passed in favor of the plaintiff against one of the street railway companies alone, a motion for a new trial of such street railway company upon the ground of newly discovered evidence, is properly denied, where the newly discovered evidence bears only upon the question of the relative degree of negligence of the two street railway companies, and does not tend to rebut or defeat plaintiff's right to recover from both of them, and presents evidence of the same general character, and to the same point, as much of the evidence adduced at the trial, and is not such as would render a different result upon a new trial reasonably probable.

ID.—RESULT OF INJURIES — TESTIMONY OF PHYSICIANS—OPINION—EVIDENCE.—Where a physician who treated the plaintiff for injuries caused by the collision of the street railway cars, and who subsequently attended plaintiff at the time of a miscarriage, testified that the miscarriage was, in his judgment, produced as the result of the injuries, a question asked of another physician who had been called in consultation too late to note personally the immediate character of the injuries, as to whether, assuming the statement of the other physician to be true, and the character of the injuries described by him to have been inflicted by a collision of the street cars, what, in his judgment, was the cause of the condition that he observed, does not improperly call for the opinion of one expert based upon that of another expert, but simply calls for the opinion of the witness as to the inducing cause of the condition in which he found the patient when called in, assuming the injuries to have been as described.

ID.—EXPERT EVIDENCE—HYPOTHETICAL QUESTION—GENERAL OBJECTION—WAIVER OF SPECIFIC OBJECTIONS.—An objection to a hypothetical question asked of a physician in the general form that it is irrelevant, immaterial, and incompetent, and not a proper hypothetical question, is insufficient to call the court's attention to the more specific objections that the question calls for the opinion of one expert based upon that of another, and that it should have contained a statement of the facts calling for the opinion; and the party making such general objections will not be permitted to avail himself upon appeal of specific objections which were not made in the court below.

ID.—STATEMENT OF TESTIMONY HEARD BY EXPERT WITNESS.—It seems that where an expert witness has heard a statement of facts testified to by another witness, it is sufficient, in putting to him a hypothetical question, to direct his attention to the testimony heard as the basis upon which his opinion is desired, without repeating the testimony.

ID.—QUALIFICATION OF EXPERT WITNESS—DISCRETION OF TRIAL JUDGE.—
The qualification of an expert witness to answer a hypothetical question calling for his opinion is a question largely for the determination of the trial judge, and his ruling will not be disturbed unless error clearly appears; and, where the witness disclosed a sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than to its admissibility.

ID.—OPINION EVIDENCE AS TO RUNNING OF ELECTRIC CARS.—The manner of running electric-cars, their rate of speed, and the facility with which they can be stopped or handled, is a proper subject for expert evidence, and not a matter of such common knowledge that the jury can judge as intelligently as one skilled in their use.

ID.—RIGHT OF WAY BETWEEN STREET RAILWAY COMPANIES — EVIDENCE OF CUSTOM.—Where the plaintiff was injured by the collision of two street railway companies, both of which were joined as defendants charged with negligence, the court may admit evidence, in behalf of one of the street railway companies, as to the custom between such companies of giving the older company the right of way at crossings, as tending to show the jury that the other defendant was guilty of the more culpable negligence.

ID.—EXCESSIVE DAMAGES—PASSION OR PREJUDICE.—Before the appellate court can interfere on the ground of excessive damages, the verdict must be so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice on the part of the jury.

APPEAL from a judgment of the Superior Court of the County of Alameda and from an order denying a new trial.    F. B. OGDEN, Judge.

The facts are stated in the opinion of the court.

*Chickering, Thomas & Gregory,* for Appellants:

The lower court erred in not granting a new trial on the ground of newly discovered evidence. The newly discovered evidence was not cumulative, as it related to a distinct fact not proven at the trial. (*Kenezleber* v. *Wahl,* 92 Cal. 202; *Keeler* v. *Jacobs,* 87 Wis. 545; *Stackpole* v. *Perkins,* 85 Me. 298; *Waller* v. *Graves,* 20 Conn. 305; *Grogan* v. *Chesapeake Ry. Co.,* 39 W. Va. 415; *Bulkin* v. *Ehret,* 20 N. Y. Supp. 731; *Wineberg* v. *Sumps,* 33 Pac. Rep. 341 (Cal., June 9, 1893); *Van Tassel* v. *New York Ry. Co.,* 20 N. Y. Supp. 715.) The lower court erred in overruling the objections to the hypothetical questions propounded to the witness Stratton, upon the ground that

they obliged the witness to determine in his own mind the truth of the evidence he had heard (*People* v. *Lake*, 12 N. Y. 358; *Luning* v. *State*, 2 Pinn. 215; 52 Am. Dec. 153; *Elliott* v. *Russell*, 92 Ind. 526), and required him to give an answer based upon another person's opinion. (*Barber's Appeal*, 63 Conn. 393; *Link* v. *Sheldon*, 136 N. Y. 1; *Louisville etc. Ry. Co.* v. *Falvey*, 104 Ind. 409; *Reynolds* v. *Robinson*, 64 N. Y. 589; *Guiterman* v. *Liverpool S. S. Co.*, 83 N. Y. 358; *Williams* v. *State*, 64 Md. 384; Rogers' Expert Testimony, sec. 30.) The lower court erred in overruling the objection to the hypothetical question asked the witness McCarthy, for the reason that he had not shown himself sufficiently familiar with the mechanism of the car, or the condition of the brakes, to entitle him to testify as an expert. (*Senn* v. *Southern Ry. Co.*, 108 Mo. 142; *McKelvey* v. *Chesapeake etc. Ry. Co.*, 35 W. Va. 500; *Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48; *Kauffman* v. *Maier*, 94 Cal. 269; *Brunker* v. *Commins*, 133 Ind. 443; *Bergquist* v. *Chandler Iron Co.*, 49 Minn. 511; *Brooks* v. *Lincoln Street Ry. Co.*, 22 Neb. 816; *Overby* v. *Chesapeake etc. Ry. Co.*, 37 W. Va. 524; *International etc. Ry. Co.* v. *Kuehn*, 2 Tex. Civ. App. 210; Rogers' Expert Testimony, 26.) Nor was the subject one on which expert testimony could be introduced. Such questions should ordinarily be determined by the jury from ordinary experience and observation. (*Sappenfield* v. *Main Street etc. R. R. Co.*, supra.) Evidence as to the custom between street railroad companies of giving the older company the right of way at crossings was not admissible, as it would only be admissible to interpret a contract, and there was no contract between the companies in this case. (Code Civ. Proc., sec. 1870; *Burns* v. *Sennett*, 99 Cal. 363. See definition of "custom" in Bouvier's Law Dictionary and Abbott's Law Dictionary; Const., art. XII, sec. 17; Civ. Code, sec. 500; *Tilley* v. *County of Cook*, 103 U. S. 155.) Taking into consideration the fact that the cause of the miscarriage is at least doubtful, that all external marks of injuries shortly disappeared, and

that in the ordinary course of nature plaintiff would have undergone a period of pain and suffering, the damages awarded are so excessive as to appear to have been given under the influence of passion or prejudice. (*Lockwood* v. *Twenty-third Street Ry. Co.*, 7 N. Y. Supp. 663; *Jennings* v. *Van Schaick*, 13 Daly, 7; *Louisville etc. R. R. Co.* v. *Minogue*, 90 Ky. 369; 29 Am. St. Rep. 378; *City of Atlanta* v. *Martin*, 88 Ga. 21; *Missouri Pac. Ry. Co.* v. *White*, 80 Tex. 202.)

*Coogan & Foote*, and *F. E. Whitney*, for Respondents.

The granting of a new trial on the ground of newly discovered evidence is peculiarly within the discretion of the trial court, and its action should not be disturbed by appeal, unless the presumption that that discretion was properly exercised can be overcome by a clear want of facts. (*Heintz* v. *Cooper*, 104 Cal. 668; *People* v. *Loui Tung*, 90 Cal. 377; *Stoakes* v. *Monroe*, 36 Cal. 383.) Appellant cannot abandon the ground of objection taken to the hypothetical question asked witness Stratton on the trial below, and assume another on the trial after an appeal to the supreme court. If the objection could have been cured if the reason had been given to the court below, and it is not given, the supreme court will not notice the objection. (*Sweetland* v. *Shattuck*, 66 Cal. 31; *Roper* v. *McFadden*, 48 Cal. 346; *Stoddard* v. *Treadwell*, 29 Cal. 281; *Morgan* v. *Hugg*, 5 Cal. 409; *In re Garcelon's Estate*, 104 Cal. 570; 43 Am. St. Rep. 134.) The matter testified to by witness McCarthy was the proper subject for expert testimony, as the opinion of a witness may be given in a question of service or trade when he is skilled therein. (Code Civ. Proc., sec. 1870, subd. 9; *Jones* v. *Tucker*, 41 N. H. 546.) Whether he had qualified as an expert or not was a question for the trial court to definitely determine, and the ruling will not be reviewed. (*Sowden* v. *Idaho Quartz Min. Co.*, 55 Cal. 443; *Fairbank* v. *Hughson*, 58 Cal. 314; *Neal* v. *Neal*, 58 Cal. 287; *Nelson* v. *Sun Mut. Ins. Co.*, 71 N. Y. 453; *Jones* v. *Tucker, supra; Wright* v. *Williams*, 47 Vt. 222; *Dole* v.

*Johnson,* 50 N. H. 452; *Taylor* v. *Roger Williams Ins. Co.,* 51 N. H. 50; *Healy* v. *Visalia etc. R. R. Co.,* 101 Cal. 585.) Before the appellate court can interfere on the ground of excessive damages, the verdict must be so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury. (*Wheaton* v. *North Beach etc. R. R. Co.,* 36 Cal. 590; *Wilson* v. *Fitch,* 41 Cal. 385; *Aldrich* v. *Palmer,* 24 Cal. 513.)

VAN FLEET, J.—Action for damages resulting from personal injuries.

The action was against both defendants, the injuries having resulted from a collision of the cars of defendants at a point where their roads crossed. Verdict and judgment were in favor of plaintiff, against the defendant Oakland Consolidated Street Railroad Company alone, and the latter appeals from the judgment and an order denying it a new trial.

1. The first point urged for a reversal is that the court below erred in not granting appellant a new trial upon the ground of newly discovered evidence. The evidence at the trial upon the question as to which one of the two defendants was guilty of the greater degree of negligence in bringing about the accident was conflicting, but that there was evidence tending directly to show negligence on the part of appellant there is no question. The newly discovered evidence, if it may be so regarded, bears only upon the question of the relative degree of negligence of the two defendants, and in no way tends to rebut or defeat plaintiff's right to recover from one or both of the defendants. While it may not be purely cumulative, it is largely of the same general character, and to the same point, as much of the evidence adduced at the trial, and, in any event, is not such as in our judgment would be likely to render a different result upon a new trial reasonably probable. Under these circumstances the court below was not only justified in deny-

ing the motion, but we think its ruling in that regard was clearly correct.

2. The evidence showed that about three months after the receipt of the injuries complained of, plaintiff, who was pregnant at the time of the accident, suffered a miscarriage, and the evidence tended to show that such miscarriage was a result of those injuries. Dr. Huntington, who treated plaintiff for the injuries, and subsequently attended her at the time of the miscarriage, was a witness in her behalf, and described to the jury the character of the injuries inflicted upon her, and testified in effect that, in view of her condition, and the character of the injuries which he described, it was his judgment that the miscarriage was produced thereby. Another physician, Dr. Stratton, who was present and heard the testimony given by Dr. Huntington, was then called as a witness for plaintiff, and testified that he had been called in consultation with Dr. Huntington at plaintiff's bedside, shortly before the miscarriage, but too late to note personally the immediate character of her injuries. After describing plaintiff's condition at the time he was so called, he was asked by plaintiff this question: "Assuming the statement made by Dr. Huntington to be true, and the character of the injuries he has described to have been inflicted by a collision of two street-cars, what, in your judgment, was the cause of the condition that you observed? Was it the accident, or any other cause?" The appellant objected to the question "as irrelevant, immaterial, and incompetent," which was overruled, and the witness answered that in his opinion the condition was due to the accident. The question was then repeated in a slightly modified form, thus: "Now, assuming again that Dr. Huntington's statement was true as to the character of the injuries which were inflicted, as I have stated, what, in your judgment, was the cause of the miscarriage, if there was a miscarriage?" To which appellant made the same objection as before, and, further, that it was not a proper hypothetical question. The objection was again overruled, and

the question received a like answer.   These rulings are
now assigned as error.   It is said that the " statement"
of Dr. Huntington to which the attention of Dr. Stratton
is directed by the question, and upon which he is re-
quested to base his opinion, necessarily included, not
only the facts testified to by Dr. Huntington, but also
the opinion of the latter based thereon, and that the
question, therefore, called for the opinion of one expert
based upon that of another, which it is claimed was im-
proper.   We do not think appellant's construction of
the question a fair one, or that the language used would
so strike the apprehension of the jury.   The question
may not be as free from ambiguity as it could have
been made, but we think it sufficiently appears there-
from, and would be so understood, that what the witness
was asked to base his opinion on was the facts stated
by Dr. Huntington as to the injuries to plaintiff.
This was made, indeed, quite clear by the question as
put in its modified form.   The construction contended
for by appellant would seem to lead to an absurdity.
He says it was equivalent to asking the witness: "As-
suming that Dr. Huntington is correct when he states
that the injuries caused the miscarriage, what, in your
opinion, was the cause of the condition that you ob-
served?"   If such were to be taken as the sense of the
question, we think it quite obvious that it could have
done appellant no harm, since the answer would have
been practically meaningless.   But such is not its ordi-
nary import.   The witness had listened to the testimony
of Dr. Huntington as to the injuries produced upon
plaintiff's person, and he was asked, assuming the in-
juries to have been as described, to give his opinion
thereon as to the inducing cause of the condition in
which he found the patient at the time he was called in.

If, however, we were to assume that the question is
open to the criticism now urged, we do not think the
objection could avail defendant here, for the reason, as
claimed by respondent, that it was not taken in the
court below.   The objection there was that the question

was "irrelevant, immaterial, and incompetent, and not a proper hypothetical question." This form of objection was entirely too general to call the court's attention to the particular vice now pointed out, and it is well settled that a party will not be permitted to avail himself in this court of a more specific objection than that made in the court below. Appellant should have pointed out the particular defect which rendered the question either incompetent, irrelevant, or immaterial, or wherein it was not a proper hypothetical question, that the objection could have been intelligently ruled upon, and, if necessary or proper, obviated. (*Colton etc. Co.* v. *Swartz*, 99 Cal. 284; *Crocker* v. *Carpenter*, 98 Cal. 421; *People* v. *Frigerio*, 107 Cal. 151.) The reason of this obviously just rule is well stated in the case of *Crocker* v. *Carpenter, supra.* There the objection in the trial court to certain offered evidence was the general one that it was irrelevant, incompetent, and immaterial. In this court the appellant sought to point out specific reasons why that objection was good, but it is said: "We think there was no error in overruling the general objection thus made. If the defendants desired to object to the offered evidence upon the ground that the proper foundation for its admission had not been laid, because it had not been shown that the facts stated in such answers were inserted with the knowledge of defendants, the objection should have been specifically pointed out and called to the attention of the court and the opposing counsel. If this specific objection had been made, it is possible that it could have been removed by further evidence upon the part of plaintiffs showing such knowledge; but the general objection that the offered evidence was incompetent was not sufficient. When such a general objection is overruled by a trial court, the party against whom the ruling is made cannot be permitted for the first time to urge in the appellate court the particular objection which, if it had been openly urged in the trial court at the time of the ruling complained of, might have been easily cured. This is

not laying down a merely technical rule. It is one which has its foundation in the proper consideration of what is due to the court and adverse counsel in the trial of a case." And the court refer to *Rush* v. *French*, 1 Ariz. 124, where it is said: "The object of requiring the grounds of objection to be stated, which may seem to be a technical rule, is really to avoid technicalities and prevent delay in the administration of justice. When evidence is offered to which there is some objection substantial justice requires that the objection be specified, so that the party offering the evidence can remove it if possible, and let the case be tried on its merits."

For like reasons the general objection made did not sufficiently point the further specific objection now urged that it was improper in framing the hypothetical question to refer the witness generally to the facts testified to by Dr. Huntington, as a basis for his opinion, but that the question itself should have contained a statement of such facts. Obviously, the general and sweeping suggestion " not a proper hypothetical question" would not be calculated to direct the court's or opposite counsel's attention to what objection was aimed at. It might refer to one of a dozen supposed reasons why the question was deemed improper. If, however, the objection were sufficient to raise the point, we are not prepared to hold that in an instance such as this, where the witness has heard a statement of facts by another, it is not sufficient, in putting the question, to direct his attention to such statement as the basis upon which his opinion is desired.

. 3. We cannot say the court abused its discretion in holding that the witness McCarthy had shown himself sufficiently qualified to answer the hypothetical question, tending to elicit his opinion as to whether the car of appellant could, with proper care and attention, have been stopped in time to avoid the collision. This is a question largely for the determination of the trial judge, and his ruling will not be disturbed except error clearly appears. In this case it does not so appear. We think

the witness disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury. It is true he was not as familiar with the condition of the car as might have been desired, but this objection goes more to the weight of the evidence than its admissibility.

Nor is there any question but that the subject was one upon which the opinion of the witness was admissible. The manner of running electric cars, their rate of speed, and the facility with which they can be stopped or handled, is not a matter of such common knowledge that the jury could judge as intelligently as one skilled in their use. It was, therefore, proper to resort to expert evidence.

4. There was no error in admitting evidence on behalf of appellant's codefendant as to the custom between street railroad companies of giving the older company the right of way at crossings. The codefendant had been jointly sued with appellant for the alleged injury, and it had a right, if such custom existed, to establish the fact, as tending to show to the jury which defendant was guilty of the more culpable negligence, and thus save itself, if possible, from being mulct in damages.

5. The jury gave a verdict for ten thousand dollars, and it is claimed that this amount is excessive. While we might not, had the question rested with us, have awarded damages in so large an amount, yet we are unable, under all the circumstances, to say that the amount is so far excessive as to imply that it was awarded under the influence of passion or prejudice. The evidence as to the extent of plaintiff's injuries, and suffering therefrom, and the resulting condition of her physical system, as exhibited at the time of the trial, was not controverted by appellant, and, consequently, stands without conflict for whatever it tends to establish. While that evidence does not show that the immediate result of the accident was the infliction of any very great external injury, it does show resulting injury, flowing proximately therefrom, of a very serious character. According to the testimony of the medical witnesses,

owing to plaintiff's condition of pregnancy at the time, the result of the shock was such as to cause the death of the foetus and induce a miscarriage, and cause plaintiff a long and painful period of suffering through a number of months, which has left her constitution and nervous system much shattered and broken, greatly impaired the action of her heart, and weakened her eyesight—a condition regarded by her physicians as permanent. "In actions for negligence the law does not attempt to fix any precise rules for ascertaining what is a just compensation, but, from the necessity of the case, leaves the assessment of the damages to the good sense and judgment of the jury, whose province it is to make the assessment; and their verdict, though subject to review, will not be disturbed merely upon the ground that the damages are excessive, nor because the opinion of the court differs from that of the jury, unless it appears that the excess was given under the influence of passion or prejudice." (*Lee* v. *Southern Pac. R. R. Co.*, 101 Cal. 118.) Before the appellate court can interfere on the ground of excessive damages, the verdict must be so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury. (*Aldrich* v. *Palmer*, 24 Cal. 513; *Wheaton* v. *North Beach etc. R. R. Co.*, 36 Cal. 590.) Applying these principles, we do not feel that we should be justified in disturbing the verdict upon the ground that it is excessive.

6. The other questions discussed do not require special notice. The objection that the evidence does not sustain the verdict is clearly untenable, and, in our judgment, the verdict sufficiently finds upon the issues submitted.

The judgment and order denying a new trial are affirmed.

GAROUTTE, J., and HARRISON, J., concurred.

Hearing in Bank denied.