[No. 13840.  In Bank. — December 12, 1891.]

B. NOYES, Administrator, etc., Appellant, *v.* THE SOUTHERN PACIFIC RAILROAD COMPANY, Respondent.

Negligence — Contributory Negligence — Province of Jury — Nonsuit. — In an action for damages for a death caused by negligence of the defendant, where the evidence introduced by the plaintiff proves or tends to prove facts from which the inference of fact might be drawn for or against the negligence of the defendant, and for or against the contributory negligence of the deceased, and neither inference can be held as a legal conclusion from the facts proved, it is for the jury to determine from the evidence whether, as matter of fact, there was negligence on the part of the defendant, or contributory negligence on the part of the deceased, and it is error for the court to grant a nonsuit.

Appeal from a judgment of the Superior Court of Contra Costa County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*D. M. Delmas,* and *Henry C. McPike,* for Appellant.

In deciding upon the propriety of a nonsuit, the plaintiff must be allowed the benefit of every fact, and every inference of fact, which the evidence proves, or tends in any degree to prove. (*Schierhold* v. *N. B. & M. R. R. Co.,* 40 Cal. 453; *Kunz* v. *City of Troy,* 104 N. Y. 352; 58 Am. Rep. 508; *Cook* v. *N. Y. C. R. R. Co.,* 1 Abb. App. 432; *Buesching* v. *St. Louis Gas Light Co.,* 73 Mo. 231; 39 Am. Rep. 503.) The track was being used as a foot-path, as a means of communication between Port Costa and the Nevada Docks, with the knowledge, acquiescence, and consent of the company, and the parties making this use of the track were there by license of the company, and were not trespassers upon the property. (*Delaney* v. *R. R. Co.,* 33 Wis. 67; *Troy* v. *R. R. Co.,* 99 N. C. 298; *Byrne* v. *R. R. Co.,* 104 N. Y. 362; 58 Am. Rep. 512; *Hooker* v. *Chic. etc. R. R. Co.,* 76 Wis. 542; *Taylor* v. *R. R. Co.,* 113 Pa. St. 162; 57 Am. Rep. 446; *Davis* v. *R. R. Co.,* 58 Wis. 646; 46 Am. Rep. 647.) If a person, under the confusion resulting from sudden fright produced by the act of another, does not select that means of escape which subsequent events demonstrate to have been the safest, or acts as a man in his confused condition might be naturally expected to act, he is not, though he flies in the very face of danger, to be taxed with negligence. (Deering on Negligence, sec. 22; 1 Shearman and Redfield on Negligence, sec. 89; Wharton on Negligence, secs. 93, 304; Beach on Contributory Negligence, sec. 14; 25 Am. Law Reg. 622–625; *Mark* v. *R. R. Co.,* 30 Minn. 493; *Haff* v. *Minneapolis,* 4 McCrary, 622; *Bernhard* v. *R. R. Co.,* 1 Abb. App. 131; *Lawrence* v. *Green,* 70 Cal. 421; *Indianapolis* v. *Stout,* 53 Ind. 145; *Robinson* v. *W. P. R. R. Co.,* 48 Cal. 421; *Karr* v. *Parks,* 40 Cal. 193; *Siegrist* v. *Arnot,* 10 Mo. App. 197; *Stevenson* v. *Chicago,* 5 McCrary, 635;

*Smith* v. *R. R. Co.*, 30 Minn. 169; *Ind. etc. R. R. Co.* v. *Carr*, 35 Ind. 513; *Dyer* v. *R. R. Co.*, 71 N. Y. 235; *Cuyler* v. *Decker*, 20 Hun, 175; *Wilson* v. *N. P. R. R. Co.*, 26 Minn. 278; 37 Am. Rep. 410; *Twomley* v. *C. P. etc. R'y Co.*, 69 N. Y. 158; 25 Am. Rep. 162; *Roll* v. *North. etc. R. R. Co.*, 15 Hun, 503; *Coulter* v. *American etc. Co.*, 56 N. Y. 585; *Cook* v. *Parham*, 24 Ala. 35; *Wilds* v. *R. R. Co.*, 33 Barb. 503; *Central etc. Co.* v. *Roach*, 64 Ga. 641; *Pittsburg etc. R. R. Co.* v. *Martin*, 82 Ind. 487; *Schultz* v. *R. R. Co.*, 44 Wis. 645; *Gumz* v. *R. R. Co.*, 52 Wis. 679; *Frink* v. *Potter*, 17 Ill. 407; *Galena etc. R. R. Co.* v. *Yarwood*, 17 Ill. 521; 65 Am. Dec. 682; *Breuckmann* v. *Twibill*, 89 Pa. St. 58.) There was negligence on the part of the defendant immediately causing the death of the deceased. A railroad company owes to persons who are crossing or using its right of way the duty of running its trains with a due regard to their safety. (*Barry* v. *R. R. Co.*, 92 N. Y. 289; 44 Am. Rep. 377; *Davis* v. *R. R. Co.*, 58 Wis. 646; 46 Am. Rep. 647; *Harriman* v. *R'y Co.*, 45 Ohio St. 11; 4 Am. St. Rep. 507; *Kay* v. *Pennsylvania R. R. Co.*, 65 Pa. St. 269; 3 Am. Rep. 628; *St. Louis etc. R. R. Co.* v. *Crosnoe*, 72 Tex. 79.) The engine on the main track, which caused the death of the decedent, approached the spot at full speed, and without giving, by whistle, bell, or otherwise, any warning of its approach, until it was almost upon the deceased. This is, in itself, evidence of negligence. (*Taylor* v. *R. R. Co.*, 113 Pa. St. 162; *Owens* v. *R. R. Co.*, 41 Fed. Rep. 187; *Burns* v. *R. R. Co.*, 104 N. Y. 368; 58 Am. Rep. 512.)

*Fred B. Lake*, and *H. S. Brown*, for Respondent.

The death of De Mattos resulted from his own negligence. He was using the right of way, not at a crossing used by the public generally for many years with the knowledge and consent of the railroad company, but longitudinally, as a highway. He was on the right of way, if not as a trespasser, at most as a mere licensee, and assumed the risks of such user, the dangers of which he should have borne in mind. (*Railroad Co.* v. *Hous-*

*ton,* 95 U. S. 701.) The company owed De Mattos no special, active, positive duty, and he was bound to exercise the highest degree of care to shield himself from injury. (2 Wood's Railroad Law, 1271; *Nicholson* v. *Erie R'y Co.,* 41 N. Y. 525; *Illinois Central R. R. Co.* v. *Godfrey,* 71 Ill. 500; 22 Am. Rep. 112; *Jeffersonville etc. R. R. Co.* v. *Goldsmith,* 47 Ind. 43; *Illinois Central R. R. Co.* v. *Hetherington,* 83 Ill. 510; *Bancroft* v. *Boston etc. R. R. Co.,* 97 Mass. 275; *Blanchard* v. *Lake Shore etc. R'y Co.,* 126 Ill. 416; 9 Am. St. Rep. 630; *Bertelson* v. *Chicago etc. R'y Co.,* 5 Dak. 313; *Ryall* v. *Central Pac. R. R. Co.,* 76 Cal. 474.) The nonsuit was properly granted. There was no evidence of negligence on the part of the respondent. As is said by the court in the case of *Delaney* v. *Minneapolis etc. R'y Co.,* 33 Wis. 72: " If the proof is all one way, either in favor of or against negligence having intervened, the inference is always one of law for the court." (See also *White* v. *Central R. R. etc. Co.,* 83 Ga. 595; *Heaney* v. *Long Island R. R. Co.,* 112 N. Y. 122; *Marland* v. *Pittsburg etc. R. R. Co.,* 123 Pa. St. 487; *Tennenbrock* v. *South Pacific Coast R. R. Co.,* 59 Cal. 269; *Glascock* v. *Central Pac. R. R. Co.,* 73 Cal. 137; *Schmidt* v. *Bauer,* 80 Cal. 565.)

BEATTY, C. J. — This is an action brought by the administrator of one De Mattos, to recover damages for causing his death.

The plaintiff was nonsuited by the superior court, and his appeal from the judgment presents two questions: 1. Did the evidence introduced by the plaintiff in the superior court make out a *prima facie* case of negligence on the part of the defendant? and if so, 2. Did such evidence show that De Mattos was himself guilty of contributory negligence?

The following brief statement of the facts which the evidence on the part of the plaintiff proved, or strongly tended to prove, is extracted from the brief of his counsel, and is in every particular sustained by the record: —

" On the twenty-sixth day of July, 1886, the deceased,

Manuel F. De Mattos, was run over and killed by an engine on defendant's road, near Port Costa.  At and for many years before that time, the defendant owned and operated a railroad running from Port Costa, along the margin of the Straits of Carquinez, in a southerly direction.  At some distance southerly from Port Costa, on the line of the road, were located certain extensive grain warehouses, called the Nevada Docks.  There was a double track running from Port Costa to these docks, — one the main and the other the switch track.  Going from Port Costa to the docks, the main track is on the right and the switch on the left hand.  The width of the roadway is not more than sufficient to accommodate the two tracks, being only twenty-four feet.  On the right, and but four feet from the end of the ties of the main track, rises an abrupt, steep bluff, at the foot of which was dug a drainage ditch, while on the left the ties projected to the water's edge.

" Mr. Edgar De Pue had been for more than two years engaged by the defendant as a contractor, to load and unload their cars at these docks, employing at times in this business as many as one hundred men.  To facilitate the operation of loading and unloading the cars, the defendant had been in the habit of sending daily two locomotive-engines from Port Costa to the docks.  On their way to the docks, these engines were accustomed to carry some of the hands engaged in loading and unloading; but by far the larger part of the force daily found its way from Port Costa to the docks, and back again after their day's labor, by walking along the space between the tracks.  There was no road, and no means, except by the railroad track, to reach the docks from Port Costa.  The deceased, De Mattos, was one of the men thus employed by Mr. De Pue.

" In the early morning of the twenty-sixth day of July, 1886, a crew of men under the supervision of Mr. De Pue started from Port Costa for their work at the docks. Two locomotive-engines were, as usual, to accompany them from Port Costa.  Some of the men, and Mr. De

Pue himself, clambered upon the engines for a ride, but the larger number — some nineteen or twenty, including their foreman, Mr. Angle — started on foot upon the track, in advance of the engine. They had gone but a short distance, when the engine on the switch-track started behind them, following them at a very moderate rate of speed. The engine on the main track, with Mr. De Pue aboard, was the last to leave Port Costa, and whether to make up for lost time, or for some other less pardonable cause, proceeded on its course at full speed.

" De Mattos was among the men who had started afoot, ahead of the engines, and who were traveling toward the docks, along the accustomed path between the tracks. While they were thus traveling on a narrow part of the road, where the switch-track came up to the water's edge, and the main track was but a few feet from the abrupt bluff on the other, they were warned, by the sound of its bell, of the approach of the engine on the switch-track. Turning, they beheld it approaching at a distance of about forty yards; but at the same time they saw the engine on the main track almost upon them, approaching without warning, and at full speed.

" As the main engine was coming at full speed, a glance sufficed to show that it would, in a moment, be abreast of the switch-engine, and thus the whole space of the roadway between the bluff and the water would be covered by them. The danger of their position flashed at once upon the mind of every man. On one side was the water, on the other side the high bluff. To use the expressive language of the foreman, 'the men did not have much time to think, and, in a moment of desperation, they took the best course they thought possible,' to escape impending death. One of the men 'jumped on top of the rocks in the water,' and was fortunate enough to escape without more than some injuries to his legs. Another tried the dangerous experiment of remaining standing between the tracks, and allowing the engines, which were running abreast, to pass him. He was struck by one of the engines as it passed, but not so as to cause

him any great injury.   Others sought to escape by run-
ning to the space at the foot of the high bluff.   Of these
was De Mattos, and as he was running for his life, across
the main track, the engine struck him, ran over him,
and killed him."

Such being the case, it should have been left to the
jury to decide from the evidence whether, as matter of
fact, there was negligence on the part of the defendant,
or contributory negligence on the part of De Mattos.   It
cannot be held as a legal conclusion upon such a state-
ment of facts, that De Mattos was, or that the defendant
was not, guilty of negligence.

The judgment and order are reversed, and cause re-
manded.

De Haven, J., and Garoutte, J., concurred.

Harrison, J., and McFarland, J., dissented.

Paterson, J., concurring. — I concur in the judgment.

In the former decision it was said: "The same facts
which show that the deceased was negligent show also
that the employees of respondent were not guilty of
negligence."

Upon further consideration of all the evidence, I am
not prepared to say, as matter of law, that the engineer in
charge of the engine on the main track, with his knowl-
edge of all the circumstances, was not negligent in run-
ning at a rate of speed which would bring the locomotives
together at the narrow part of the road where the men
were traveling.

The question is not, How would I act were I a juror?
but whether there is any evidence at all from which in-
ferences may be drawn in support of or against the
charge of negligence.   Speaking of nonsuit, the court,
in *Wilson* v. *Southern Pacific R. R. Co.*, 62 Cal. 172, said:
"But where negligence, as the essential fact in the case,
is disputed, and the evidence of it is conflicting, or con-
sists of circumstances from which inferences may be
drawn for or against it, it is the province of the jury

to determine, under instructions by the court, whether the evidence establishes it as the proximate cause of the injury complained of."

Whether the engineer was guilty of negligence, and whether the deceased was guilty of contributory negligence, under the rule stated and under the evidence, cannot be determined as matter of law, but should be submitted to the jury, with proper instructions from the court.